**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

NINA VAPHIDES, individually, and as the
Administratrix of the Estate of N.R., deceased,

Plaintiff,

-v-                                                    3:25-CV-960 (AJB/ML)

NORWICH CITY SCHOOL DISTRICT,
SCOTT RYAN and JACOB ROE,

Defendants.

**Hon. Anthony Brindisi, U.S. District Judge:**

<u>**DECISION and ORDER**</u>

## I.      INTRODUCTION

On July 21, 2025, plaintiff Nina Vaphides ("plaintiff") commenced this action, individually

and as administratrix of the estate of her minor daughter N.R. ("N.R."), against Norwich City

School District (the "District") and District administrators Scott Ryan and Jacob Roe (collectively

"defendants").  Dkt. No. 1.  This action follows the tragic suicide of N.R., a former student of the

District's schools.  *Id.*

Plaintiff's complaint asserts claims under 42 U.S.C. § 1983, Title II of the Americans with

Disabilities Act of 1990 (the "ADA"), Section 504 of the Rehabilitation Act of 1973 (the "Reha-

bilitation Act"), and related state law.  Dkt. No. 1.  In short, plaintiff alleges that defendants denied

N.R. reasonable accommodations for her mental health condition and failed to protect her from an

escalating pattern of bullying that ultimately led to her death by suicide on November 3, 2024.  *Id.*

Defendants have moved to dismiss plaintiff's federal claims under Federal Rule of Civil

Procedure ("Rule") 12(b)(6).  Dkt. No. 8.  Defendants' motion has been fully briefed, Dkt. Nos.

12–13, and will be considered on the basis of the submissions without oral argument.

## II.    BACKGROUND

The following facts are taken from the complaint and will be assumed true for the purpose of evaluating defendants' motion to dismiss.

N.R. was a student of the District from eighth grade until the end of tenth grade.  Dkt. No. 1 ("Compl.") ¶¶ 9, 23.  During the 2021–2022 academic year, when N.R. was in eighth grade, other students began to bully her at school.  *Id.* ¶¶ 23–25, 35.  As a result of the bullying, N.R. was diagnosed with emotional mental health injuries that required medical treatment.  *Id.* ¶ 36.  Plaintiff and N.R. notified the District of N.R.'s mental health diagnoses and provided documentation from N.R.'s treating medical provider recommending that N.R. receive at-home, online instruction as a necessary accommodation for her condition.  *Id.* ¶¶ 38–39.  The District allowed N.R. to complete the remainder of her eighth-grade year online.  *Id.* ¶ 40.

In the fall of 2022, N.R. returned to school for her ninth-grade year.  Compl. ¶ 41.  The in-school bullying resumed, and N.R.'s mental health condition worsened.  *Id.* ¶ 43.  Plaintiff and N.R. submitted documentation from N.R.'s treating medical provider to the District's guidance counselor and the District's high school principal, Jacob Roe ("Principal Roe"), advising them of her continuing diagnoses and, again, requesting that N.R. receive online instruction as an accommodation.  *Id.* ¶¶ 13, 45.  Defendants allowed N.R. to complete the rest of the school year online.  *Id.* ¶ 46.

At the outset of the 2023–2024 school year, plaintiff and N.R. submitted documentation from N.R.'s treating provider who, again, recommended online instruction as an accommodation for N.R.'s mental health condition.  Compl. ¶ 51.  Defendants denied the request, and N.R. returned to school for her sophomore year.  *Id.* ¶¶ 47, 52.  The bullying resumed, and N.R.'s mental health continued to deteriorate.  *Id.* ¶¶ 47, 49.  Plaintiff appealed defendants' denial of an online

instruction accommodation to District Superintendent Scott Ryan ("Superintendent Ryan"). *Id.* ¶¶ 11, 55. Superintendent Ryan denied the appeal and advised plaintiff that the District would not permit N.R. to receive online instruction that year. *Id.* ¶ 56.

In lieu of N.R.'s requested accommodation, defendants placed N.R. into a smaller-sized class with just three to four other students. Compl. ¶ 61. As the school year went on, defendants placed additional students in N.R.'s class. *Id.* ¶ 62. Eventually, N.R.'s class reached the size of a standard general education class. *Id.* Consequently, N.R.'s mental health condition worsened. *Id.* ¶¶ 73–74. She experienced increased anxiety and depression and suffered daily panic attacks. *Id.* ¶ 75. At some point, Principal Roe advised plaintiff and N.R. that another student in the District had been afforded the same at-home, online instruction accommodation that defendants denied to plaintiff. *Id.* ¶ 77. The other student was approximately the same age as N.R. and had the same diagnoses as her. *Id.*

In late March or early April of 2024, defendants finally granted N.R.'s request to receive online instruction. Compl. ¶ 84. But by that point, "N.R.'s emotional mental health injury was exacerbated to the point of being totally devastated." *Id.* ¶ 85. N.R. finished the tenth-grade school year online, but did not return to school for her eleventh-grade year. *Id.* ¶ 87. Unable to recover from her emotional mental health injuries, N.R. tragically took her own life on November 3, 2024. *Id.* ¶¶ 92–93.

## III.    LEGAL STANDARD

### A.  Rule 12(b)(6)

The Federal Rules of Civil Procedure permit a party to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss brought under Rule 12(b)(6), a "complaint must include 'enough facts to state a

claim to relief that is plausible on its face.'"  *Kane v. Mount Pleasant Cent. Sch. Dist.*, 80 F.4th 101, 106 (2d Cir. 2023) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A claim is plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Palin v. New York Times Co.*, 940 F.3d 804, 810 (2d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678).

To assess this plausibility requirement, the court "must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and draw all reasonable inferences in favor of the plaintiff, *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).  In doing so, the court generally confines itself to the facts alleged in the pleading, documents attached to the complaint or incorporated into it by reference, and matters of which judicial notice may be taken.  *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016).

## IV.   DISCUSSION

Plaintiff's complaint asserts four federal causes of action: (1) a § 1983 "class-of-one" equal protection claim against all defendants, *see* Compl. ¶¶ 94–132; (2) a disability discrimination claim under Title II of the ADA against the District, *id.* ¶¶ 133–54; (3) a disability discrimination claim under Section 504 of the Rehabilitation Act against the District, *id.* ¶¶ 155–76; and (4) a municipal liability claim[1] pursuant to *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978) against the District, *id.* ¶¶ 177–207.

---

[1] Plaintiff's fourth cause of action asserts a standalone "*Monell* Liability" claim against the District based on the alleged conduct of Principal Roe and Superintendent Ryan.  Compl. ¶¶ 177–207.  But "*Monell* does not create a stand-alone cause of action."  *Askins v. Doe No. 1*, 727 F.3d 248, 253 (2d Cir. 2013).  Rather, "it *extends* [§ 1983] liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation."  *Segal v. City of N.Y.*, 459 F.3d 207, 219 (2d Cir. 2006) (emphasis in original).  Accordingly, the allegations underlying plaintiff's *Monell* claim will be understood as relating to plaintiff's § 1983 equal protection claim against the District.

Defendants have moved to dismiss all of plaintiff's federal claims under Rule 12(b)(6). Dkt. No. 8-2 ("Defs.' Mem").[2] Plaintiff opposes dismissal. Dkt. No. 12 ("Pl.'s Opp.").

### A. Section 1983 Equal Protection Claim

Plaintiff's complaint asserts § 1983 "class-of-one" equal protection claims against all defendants based on allegations that they intentionally treated N.R. differently from a similarly situated student by denying N.R.'s request for at-home, online instruction her sophomore year. Compl. ¶¶ 94–132, 177–207. Defendants argue[3] that plaintiff's class-of-one equal protection claim must be dismissed because: (1) plaintiff cannot maintain a class-of-one claim based on defendants' discretionary denial of an accommodation; (2) defendants had a rational basis for denying N.R.'s requested accommodation; and (3) plaintiff's allegations are insufficient to give rise to municipal liability against the District. Defs.' Reply at 4–6.[4] Plaintiff maintains that she has plausibly alleged a viable class-of-one equal protection claim against all defendants. Pl.'s Opp. at 5–7, 12–13.

### 1. Discretionary State Action

First, defendants argue that plaintiff cannot maintain a class-of-one equal protection claim based on the discretionary decisionmaking of state actors. Defs.' Reply at 5.

---

[2] Defendants' opening memorandum of law is over 60 pages long. *See* Defs.' Mem. This well exceeds the presumptive 25-page limit set by Local Rule 7.1(b), *see* N.D.N.Y. L.R. 7.1(b), and defendants have not sought leave to file an oversized brief. Upon further review of defendants' filing, it appears that defendants unintentionally submitted three identical copies of their brief in a single filing. The Court has discretion to strike filings in violation of this District's Local Rules, but it declines to do so under the circumstances.

[3] As an initial matter, defendants' opening memorandum makes no reference to plaintiff's § 1983 class-of-one equal protection claims. Pl.'s Opp. at 5 (citing Defs.' Mem. at 16–18). Instead, defendants argue that plaintiff has failed to plausibly allege § 1983 procedural or substantive due process claims, *see* Defs.' Mem. at 16–18—neither of which have been asserted in plaintiff's complaint, *see generally* Compl.; Pl.'s Opp. at 5 (explaining that plaintiff has not asserted substantive due process or procedural due process claims). Recognizing their oversight, defendants addressed plaintiff's class-of-one equal protection claim in their reply papers. *See* Dkt. No. 12 ("Defs.' Reply") at 4–6.

[4] Citations to the parties' briefing refer to the CM/ECF-generated pagination.

"The Equal Protection Clause [of the Fourteenth Amendment] requires that the government treat all similarly situated people alike." *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001). "[T]he prototypical equal protection claim involves discrimination against people based on their membership in a vulnerable class," but the Second Circuit has "long recognized that the equal protection guarantee also extends to individuals who allege no specific class membership but are nonetheless subjected to invidious discrimination at the hands of government officials." *Id.*

Generally speaking, "[a] class-of-one claim exists 'where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *Analytical Diagnostic Labs, Inc. v. Kusel*, 626 F.3d 135, 140 (2d Cir. 2010) (quoting *Village of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000)). But the class-of-one theory of equal protection is not without limits. As the Supreme Court has explained:

> There are some forms of state action . . . which by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments. In such cases the rule that people should be "treated alike, under like circumstances and conditions" is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted.

*Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 603 (2008).

Defendants argue that the Court's reasoning in *Engquist* applies to plaintiff's class-of-one equal protection claim because defendants' denial of N.R.'s accommodation request for online instruction was the result of discretionary decisionmaking. Defs.' Reply at 5–6.

The Court disagrees. For one, the Supreme Court expressly limited its holding in *Engquist* to the public employment context. *See Engquist*, 553 U.S. at 603 ("In concluding that the class-of-one theory of equal protection has no application in the public employment context—*and that is all we decide*—we are guided . . . by the 'common-sense realization that government offices

- 6 -

could not function if every employment decision became a constitutional matter.'" (quoting *Connick v. Myers*, 461 U.S. 138, 143 (1983) (emphasis added)).  And although the Second Circuit has suggested that *Engquist* "added a third requirement to 'class of one' claims . . . [*i.e.*,] that the offending governmental action at issue be non-discretionary," *Ruston v. Town Bd. for Skaneateles*, 610 F.3d 55, 58 n.3 (2d Cir. 2010), subsequent Second Circuit decisions have made clear that "*Engquist* does not bar all class-of-one claims involving discretionary state action."  *Analytical Diagnostic Labs, Inc.*, 626 F.3d at 142; *see also Fortress Bible Church v. Feiner*, 694 F.3d 208, 222 (2d Cir. 2012) ("We have since held that *Engquist* does not bar all class-of-one claims involving discretionary state action.").

Indeed, the Second Circuit has consistently recognized class-of-one equal protection challenges to discretionary state action where: (1) the state was "acting in its regulatory capacity as a sovereign rather than as a propriet[o]r"; and (2) the decisionmaker "did not have complete discretion." *Fortress Bible Church*, 694 F.3d at 222; *see also Hu v. City of N.Y.*, 927 F.3d 81, 100 n.5 (2d Cir. 2019) (finding that *Engquist* did not bar class-of-one claim because "(1) the state act[ed] as a sovereign rather than a proprietor; and (2) the defendants operat[ed] within a regulatory framework . . . that articulate[d] clear standards of conduct, limit[ed] their discretion, and provide[d] mechanisms for challenging and reviewing their determinations").

As alleged, plaintiff's class-of-one claim satisfies both conditions.  First, by denying N.R.'s request for online instruction, defendants acted pursuant to the state's authority as a sovereign to regulate public education, not the state's authority as a proprietor to manage its own internal affairs.  And second, as defendants acknowledge, they did not have unfettered discretion in deciding N.R.'s request; their determination was guided by a regulatory framework and subject to review. *See* Defs.' Reply at 5 (referring to "the regulations . . . that guide how [the] District evaluates

medical requests for in-home online instruction" (citing 8 NYCRR § 100.22(d)); *see also* 8 NY-CRR § 100.22(d)(5); Compl. ¶¶ 55–56 (alleging that plaintiff appealed defendants' denial to Superintendent Ryan).  Accordingly, *Engquist* does not preclude plaintiff's class-of-one equal protection claim.

### 2. Rational Basis For Denying Accommodation

Next, defendants argue that plaintiff's class-of-one equal protection claim must be dismissed because plaintiff has not plausibly alleged that defendants lacked a rational basis for denying N.R.'s accommodation request.  Defs.' Reply at 4–5.

As noted *supra*, a class-of-one equal protection claim exists where a plaintiff alleges "'[1] that she has been intentionally treated differently from others similarly situated and [2] that there is no rational basis for the difference in treatment.'"  *Hu*, 927 F.3d at 91 (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).  "[C]lass-of-one plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves."  *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006).  Accordingly, to state a viable class-of-one equal protection claim, a plaintiff must plausibly allege that:

> (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake.

*Analytical Diagnostic Labs, Inc.*, 626 F.3d at 140.

Plaintiff's allegations meet these requirements.  First, plaintiff alleges that defendants denied N.R.'s request to receive online instruction as an accommodation for her mental health condition but permitted another student of approximately the same age and with "the same diagnoses as N.R." to receive online instruction as an accommodation.  Compl. ¶ 77.  Second, plaintiff alleges

- 8 -

that she appealed defendants' determination to Superintendent Ryan, who refused to reverse the denial. *Id.* ¶¶ 55–56. Collectively and taken as true, these allegations support a plausible inference that N.R.'s circumstances were highly similar to those of the student who was granted an online instruction accommodation, and that defendants did not deny N.R.'s request for online instruction by mistake.[5]

### 3. Municipal Liability

Finally, defendants argue that plaintiff's equal protection claim against the District must be dismissed because plaintiff has not plausibly alleged any unconstitutional conduct attributable to the District. Defs.' Mem. at 14–15.

To assert § 1983 claim against a municipality or its agencies a plaintiff must plausibly allege "(1) a municipal policy or custom that (2) causes the plaintiff to be subjected to (3) the deprivation of a constitutional right." *Agosto v. N.Y.C. Dep't of Educ.*, 982 F.3d 86, 97 (2d Cir. 2020). "'Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law.'" *Friend v. Gasparino*, 61 F.4th 77, 93 (2d Cir. 2023) (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)).

Where, as here, "a plaintiff seeks to hold a municipality liable for a 'single decision by [a] municipal policymaker[ ],' the plaintiff must show that the official had final policymaking power."

---

[5] Defendants maintain that "the District demonstrated a rational basis to deny [p]laintiff's request for in-home online instruction by submitting N.R.'s medical note from August 2023 and the regulations (8 NYCRR § 100.22(d)(5)) that guide how a District evaluates medical requests for in-home online instruction." *See* Defs.' Reply at 5.

This conclusory avowal does not alter the Court's conclusion. First, it is unclear what, if any, rational basis can be gleaned from N.R.'s doctor's note and the regulations governing the procedures for requesting in-home instruction. Setting that aside, defendants' contention ignores the procedural posture. On a Rule 12(b)(6) motion, the proper inquiry is whether *the complaint* "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678 (quoting *Bell Atl. Corp.*, 550 U.S. at 570). For the reasons explained above, plaintiff's allegations meet the plausibility threshold.

*Roe v. City of Waterbury*, 542 F.3d 31, 37 (2d Cir. 2008) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986)). "Whether an official has final policymaking authority is a legal question, determined on the basis of state law." *Roe*, 542 F.3d at 37. "[T]he critical inquiry is not whether an official generally has final policymaking authority; rather, the court must specifically determine whether the government official is a final policymaker with respect to the particular conduct challenged in the lawsuit." *Id.*

Plaintiff's § 1983 claim against the District is premised on the decisions of Superintendent Ryan and Principal Roe—whom she identifies as District officials with policymaking authority. Compl. ¶¶ 178–81. The District argues that plaintiff has not plausibly alleged that Principal Roe or Superintendent Ryan had "the level of policymaking discretion" necessary to trigger municipal liability. Defs.' Mem. at 15.

The Court disagrees. To be sure, the regulations cited by defendants provide that the denial of a request for at-home instruction is appealable to "the school district's board of education." 8 N.Y.C.R.R. § 100.22(d)(5). However, the Second Circuit has recognized that New York law allows a board of education to delegate its authority. *Port Washington Teachers' Ass'n v. Bd. of Educ. of Port Washington Union free Sch. Dist.*, 478 F.3d 494, 501 (2d Cir. 2007) (citing N.Y. Educ. Law § 1709(33)); *see also* N.Y. Educ. Law §§ 2503(1), (3).

Plaintiff has alleged that she appealed defendants' determination to Superintendent Ryan who ultimately denied her appeal. *See* Compl. ¶¶ 55–56. While additional factual development may reveal that the District's board of education had not delegated its authority to hear appeals under 8 N.Y.C.R.R. § 100.22(d)(5) to Superintendent Ryan, plaintiff's nonconclusory allegations are sufficient at this stage to support a plausible inference that Superintendent Ryan had final

policymaking authority over plaintiff's accommodation request.  Accordingly, defendants' motion to dismiss this claim must be denied.

### B.  Disability Discrimination Claims

Plaintiff's complaint asserts disability discrimination claims against the District under Title II of the ADA and Section 504 of the Rehabilitation Act (together, "the Acts").  Compl. ¶¶ 133–76.  The District argues that plaintiff's disability discrimination claims must be dismissed because: (1) they are barred by sovereign immunity, Defs.' Mem. at 21; (2) plaintiff has not plausibly alleged that the District discriminated against N.R. on the basis of her disabilities, *id.* at 13–14; and (3) plaintiff seeks relief that is not available under the Acts, *id.* at 11–13.  In opposition, plaintiff maintains that she has plausibly alleged viable disability discrimination claims against the District. Pl.'s Opp. at 7–11.

"[The Acts] prohibit discrimination against qualified disabled individuals by requiring that they receive 'reasonable accommodations' that permit them to have access to and take a meaningful part in public services and public accommodations."  *Powell v. Nat'l Bd. of Med. Examiners*, 364 F.3d 79, 85 (2d Cir.) (quoting *Henrietta D. v. Bloomberg*, 331 F.3d 261, 273 (2d Cir. 2003)), *opinion corrected*, 511 F.3d 238 (2d Cir. 2004).  Courts analyze claims brought under the Acts together because they "impose identical requirements."  *Rodriguez v. City of N.Y.*, 197 F.3d 611, 618 (2d Cir. 1999); *see Henrietta D.*, 331 F.3d at 272.

### 1.  Sovereign Immunity

Because sovereign immunity operates as a jurisdictional limitation, the Court addresses it first.  *See Baroni v. Port Auth. of N.Y. & N.J.*, 161 F.4th 48, 54 (2d Cir. 2025) ("[S]tate sovereign immunity raises a threshold question that must be resolved . . . before proceeding to the merits.") (internal quotation omitted).  The District argues that plaintiff's disability discrimination claims

are barred by sovereign immunity. Defs.' Mem. at 18–21. Plaintiff has not responded to this argument directly, but maintains that she has plausibly alleged viable disability discrimination claims against the District. Pl.'s Opp. at 5–7.

"The Eleventh Amendment prohibits the 'Judicial power of the United States' from extending to 'any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State . . .'" *In re Deposit Ins. Agency*, 482 F.3d 612, 617 (2d Cir. 2007) (quoting U.S. Const. amend. XI.). "This jurisdictional bar also immunizes a state entity that is an 'arm of the State[.]'" *In re Deposit Ins. Agency*, 482 F.3d at 617 (citing *N. Ins. Co. of N.Y. v. Chatham Cnty., Ga.*, 547 U.S. 189 (2006)). The party asserting sovereign immunity bears the burden of demonstrating that it is "an arm of the State." *Gorton v. Gettel*, 554 F.3d 60, 62 (2d Cir. 2009).

The District has assumed, without explanation, that it is an arm of the State of New York entitled to sovereign immunity. *See* Defs.' Mem. at 19. On the contrary—the Second Circuit has consistently "held that local school districts in New York State are not arms of the state." *Gorton*, 554 F.3d at 62 (citing *Fay v. S. Colonie Cent. School Dist.*, 802 F.2d 21, 27–28 (2d Cir. 1986)); *see also Woods v. Rondout Valley Cent. Sch. Dist. Bd of Educ.*, 466 F.3d 232, 239 (2d Cir. 2006) (noting same). Absent even a cursory attempt to establish its entitlement to sovereign immunity, the Court must reject the District's argument that sovereign immunity bars plaintiff's disability discrimination claims.

### 2. Merits

Next, the District argues that plaintiff's disability discrimination claims must be dismissed because plaintiff has not plausibly alleged that the District treated N.R. less favorably than others because of N.R.'s disabilities. Defs.' Mem. at 13–14. In opposition, plaintiff maintains that her failure to accommodate claim does not require a showing of disparate impact. Pl.'s Opp. at 7–9.

The Court agrees with plaintiff. "[A] claim of discrimination based on a failure reasonably to accommodate is distinct from a claim of discrimination based on disparate impact." *Henrietta D.*, 331 F.3d at 276–77; *see also Tardif v. City of New York*, 991 F.3d 394, 404 (2d Cir. 2021) (explaining that "[a] plaintiff may base her Title II claim on any of three theories of liability: disparate treatment (intentional discrimination), disparate impact, or failure to make a reasonable accommodation"). "Quite simply, the demonstration that a disability makes it difficult for a plaintiff to access benefits that are available to both those with and without disabilities is sufficient to sustain a claim for a reasonable accommodation." *Henrietta D.*, 331 F.3d at 277.

Plaintiff asserts disability discrimination claims under a failure to accommodate theory. Specifically, she alleges that the District failed to accommodate N.R. by denying her request for online instruction at the outset of her tenth-grade year and by gradually depriving her of the benefit of her substitute accommodation. Compl. ¶¶ 133–76. According to plaintiff, these failures made it difficult for N.R. to receive the free and public education to which she was entitled. *Id.* ¶¶ 149, 171. In all, these allegations make out a plausible disability discrimination claim based on the District's alleged failure to reasonably accommodate N.R.

Still, "there is undoubtedly a comparative element to the reasonable accommodation analysis, and a plaintiff must show that the denial of benefits was 'by reason of . . . disability.'" *Henrietta D*, 331 F.3d at 280. This element is met where a plaintiff plausibly alleges that:

> (i) [She is] facially entitled to public benefits which are also available to similarly situated persons without disabilities, and (ii) that under a state of affairs where the social services system functioned properly, [her] disabilities would clearly necessitate a reasonable accommodation in order for [her] meaningfully to access the benefits.

*Id.*

Plaintiff has plausibly alleged both prongs.  First, plaintiff has plausibly alleged that the District's failure to accommodate N.R. deprived her of a free and appropriate public education. Compl. ¶¶ 52–56, 62–67, 73–75, 85; *see also Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis.*, 804 F.3d 178, 186–87 (2d Cir. 2015) ("In the education context, the ADA and the Rehabilitation Act require a covered institution to offer reasonable accommodations for a student's known disability. . .").  Second, plaintiff's allegations support a plausible inference that N.R. would have been granted an online instruction accommodation for her condition if the system had been functioning properly.  *See* Compl. ¶¶ 39–40, 45–46 (alleging that N.R. was granted an online instruction accommodation for portions of the 2021–2022 and 2022–2023 school years), 51–57 (alleging that N.R.'s diagnoses remained the same going into the 2023–2024 school year, but that defendants denied N.R. an online instruction accommodation), 77–78 (alleging that another student with the same diagnoses as N.R. received an online instruction accommodation), 84 (alleging that the District subsequently granted N.R. an online instruction accommodation).  Collectively and taken as true, plaintiff's allegations plausibly state failure to accommodate claims against the District.

### 3.  Damages

Lastly, the District argues that plaintiff's disability discrimination claims must be dismissed because plaintiff's complaint demands damages that are unavailable under the Acts. Defs.' Mem. at 11–13.  In opposition, plaintiff maintains that the Acts permit recovery for N.R.'s loss of education.  Pl.'s Opp. at 9–11.

Under the Acts, a plaintiff can recover all remedies available under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, including monetary damages.  *See Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 275 (2d Cir. 2009) (citing 29 U.S.C. § 794a(a)(2)); *see also* 42 U.S.C. § 12133 (ADA, incorporating remedies available under the Rehabilitation Act).  But the scope of

available monetary relief is limited to those damages traditionally recoverable under contract law. *Doherty v. Bice*, 101 F.4th 169, 174 (2d Cir.) (citing *Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212, 219–21 (2022)), *cert. denied*, 145 S. Ct. 381 (2024). Consequently, a plaintiff cannot recover punitive damages or emotional distress damages under the Acts. *See Barnes v. Gorman*, 536 U.S. 181, 189 (2002) (punitive damages); *Doherty*, 101 F.4th at 175 (emotional distress damages).

The District initially argued that plaintiff's complaint demands only "consequential damages" for emotional harm, which are not recoverable under the Acts. Defs.' Mem. at 11–13. In opposition, plaintiff concedes that emotional distress damages are unavailable under the Acts,[6] and she clarifies that her complaint demands expectation damages for N.R.'s loss of education. Pl.'s Opp. at 9–11. In reply, the District has acknowledged that expectation damages are available under the Acts, but maintains that plaintiff may not recover them because "N.R. is deceased, [and] there is no compensatory educational program that would 'correct' for the alleged loss of educational opportunities during her 10th grade year." Defs.' Reply at 6.

Contrary to the District's contentions, N.R.'s death did not extinguish her claim for compensatory relief. "Absent some specific direction by Congress, whether an action created by federal statutory law survives the death of the plaintiff is a matter of federal common law." *United States v. Wolin*, 489 F. Supp. 3d 21, 27 (E.D.N.Y. 2020) (quoting *Estwick v. U.S. Air Shuttle*, 950 F. Supp. 493, 498 (E.D.N.Y. 1996)). "'In general, under the federal common law, a claim survives the party's death if it is remedial rather than punitive.'" *Wolin*, 489 F. Supp. 3d at 27 (quoting *Sharp v. Ally Fin., Inc.*, 328 F. Supp. 3d 81, 88–89 (W.D.N.Y. 2018) (internal quotation omitted)).

---

[6] To the extent that plaintiff's causes of action under the Acts "could be construed to include a claim for 'emotional damages,'" she has abandoned "those specific claimed injuries." Pl.'s Opp. at 10.

The Acts are routinely characterized as remedial.  *See Henrietta D.*, 331 F.3d at 279 (describing the Acts as remedial statutes); *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 111 (2d Cir. 2001) (same); *Consol. Rail Corp. v. Darrone*, 465 U.S. 624, 634 (1984) (noting the Rehabilitation Act's "remedial purpose").  And district courts have routinely held that claims for compensatory damages under the Acts survive a plaintiff's death.  *See Est. of Solinsky v. Custodial Maint., Inc.*, 2009 WL 37164, at *3 (N.D.N.Y. Jan. 6, 2009) (agreeing that "actions under the ADA survive the death of a party"); *Gershanow v. Cnty. of Rockland*, 2014 WL 1099821, at *4 (S.D.N.Y. Mar. 20, 2014) (finding that "a viable claim for money damages under the ADA would survive a plaintiff's death"); *see also O'Rourke v. Drunken Chicken in NY Corp.*, 2021 WL 1394176, at *3 n.3 (E.D.N.Y. Feb. 26, 2021) (finding that claims under the ADA survived plaintiff's death because the ADA is remedial in nature), *report and recommendation adopted*, 2021 WL 973086 (E.D.N.Y. Mar. 16, 2021).

Plaintiff's plausibly alleged disability discrimination claims for compensatory damages survived N.R.'s death.  Accordingly, the District's motion to dismiss them must be denied.

## C.  State Law Claims

Plaintiff's complaint asserts state law negligent supervision and wrongful death claims against all defendants.  Compl. ¶¶ 208–25.  Rather than seeking dismissal of plaintiff's state law claims, defendants have asked the Court to decline supplemental jurisdiction over them in the event that plaintiff's federal claims are dismissed.  Defs.' Mem. at 21–22.  Because the Court declined to dismiss plaintiff's federal claims, *see supra* Point IV.A–B, this branch of defendants' motion must be denied as moot.

### D.  Motion to Seal

Defendants have moved under Local Rule 5.3 to seal certain documents submitted in connection with their motion to dismiss; namely, plaintiff's Notice of Claim pursuant to N.Y. General Municipal Law § 50-e, the transcript of plaintiff's N.Y. General Municipal Law § 50-h examination, and a doctor's note from N.R.'s treating provider.  Dkt. No. 9.  Plaintiff has not opposed defendants' motion to seal.

The common law and the First Amendment accord a presumption of public access to judicial documents.  *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 124 (2d Cir. 2006).  As relevant here, "a strong presumption attaches to materials filed in connection with dispositive motions, such as a motion to dismiss or a summary judgment motion."  *Olson v. Major League Baseball*, 29 F.4th 59, 90 (2d Cir. 2022).

Under this district's local rules, "[a] party seeking to have a document, a portion of a document, a party or an entire case sealed bears the burden of filing an application setting forth the reason(s) that the referenced material should be sealed under the governing legal standard." L.R. 5.3(a) (citing *Lugosch*, 435 F.3d at 119-27); *see also DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818, 826 (2d Cir. 1997) ("The burden of demonstrating that a document submitted to a court should be sealed rests on the party seeking such action.").

While defendants have identified some potentially viable grounds for sealing or at least partially redacting[7] some of the documents at issue, *see* Dkt. No. 9-1 ¶¶ 5–6, defendants have not complied with local rule requiring that they justify their request under the standard set forth in *Lugosch*.  Accordingly, defendants' motion to seal is denied without prejudice.

---

[7] Defendants have moved to seal the entire transcript of plaintiff's 50-h examination.  While redacting portions of the transcript may be necessary to protect the identified privacy interests, defendants have not identified a basis for the wholesale sealing of the transcript.  *See Matter of New York Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987) (finding that the redaction of names may be an appropriate alternative "to the wholesale sealing of the papers").

Within fourteen days of the date of this Order, defendants may resubmit their denied sealing request. Defendants shall support their application for sealing and/or redactions with authority and articulated reasoning that is specific to the content that they seek to keep under seal. And given the strong presumption of public access to documents submitted in support of dispositive motions, a renewed request should also include any proposed redactions that would be sufficient to protect the privacy interests at stake. If no further application is made within this time frame, the unredacted materials must be filed on the public docket.

## V.    CONCLUSION

Therefore, it is

**ORDERED** that

1. Defendants' motion to dismiss (Dkt. No. 8) is **DENIED**;

2. Defendants' motion to seal (Dkt. No. 9) is **DENIED**, without prejudice;

3. Defendants shall answer the pleading within 14 days of the date of this decision;

4. Any renewed sealing request must be filed within 14 days of this decision and must comply with the requirements set forth above; and

5. If no renewed request to seal is filed within 14 days, defendants shall file the unredacted documents on the public docket.

The Clerk of the Court is directed to:

a. terminate the pending motions (Dkt. Nos. 8 & 9); and

b. set a deadline accordingly.

**IT IS SO ORDERED.**

Dated:  July 23, 2026
        Utica, New York.

Anthony J. Brindisi
U.S. District Judge